UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS OZZBORN,

                            **Plaintiff,**

  vs.
                                                  9:17-CV-1039
                                                  (MAD/ATB)

MATTHEW CORNELL,
*Correctional officer*,

                            **Defendant.**
_____

APPEARANCES:                                     OF COUNSEL:

**RUBENSTEIN & RYNECKI**                 SCOTT E. RYNECKI, ESQ.
16 Court Street, Suite 1717
Brooklyn, New York 11241
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**         AIMEE M. COWAN, AAG
**STATE ATTORNEY GENERAL**
300 South State Street, Suite 300
Syracuse, New York 13202
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

                              **MEMORANDUM-DECISION AND ORDER**

                                       **I. INTRODUCTION**

      On September 19, 2017, Plaintiff Thomas Ozzborn ("Plaintiff"), a former inmate housed at the Auburn Correctional Facility ("Auburn CF"), filed a complaint in the Northern District of New York, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1367, against Defendants Corrections

Officer Matthew Cornell, the New York State Department of Corrections and Community Supervision ("DOCCS"), and the State of New York (collectively, "Defendants"). *See* Dkt. No. 1. On June 22, 2018, the Court issued a Memorandum-Decision and Order dismissing all claims against the State Defendants, and the state law assault and battery and all claims against Defendant Cornell in his official capacity. Dkt. No. 20. As a result of the Court's decision, Defendant Cornell is the sole remaining defendant in this action.

On August 21, 2020, Defendant filed a motion for summary judgment on Plaintiff's remaining claims of false arrest, false imprisonment, and denial of a right to a fair trial. Dkt. No. 58. On October 21, 2020, Plaintiff filed an opposition to Defendant's motion. Dkt. No. 62. Defendant filed a reply on October 28, 2020. Dkt. No. 63. As set forth below, Defendant's motion is granted in part and denied in part.

## II. BACKGROUND

On May 9, 2015, Defendant singled out Plaintiff for a "random" pat frisk. Dkt. No. 58-2 at ¶ 7. Plaintiff alleges that days prior to this, Plaintiff had a dispute with Defendant and afterwards, Defendant threatened Plaintiff, stating "I'm going to see you later." *See* Dkt. No. 62-1 at 13. Defendant asserts that he recovered a three- and one-half-inch sharpened tweezer prong in Plaintiff's right shoe. Dkt. No. 58-2 at ¶ 9. Plaintiff alleges that Defendant planted the weapon in his shoe. Dkt. No. 62-1 at 2.

DOCCS held a disciplinary hearing on May 14, 2015, and May 28, 2015. *See* Dkt. No. 58-2 at ¶ 19. Although Plaintiff maintained his innocence throughout the hearing, he was found guilty based on Defendant's allegations and transferred to the Cayuga County Correctional

Facility Special Housing Unit ("SHU") where he spent seven months in solitary confinement. *See* Dkt. No. 62-1 at 14.

Faced with a possible sentence of fifteen years to life, Plaintiff eventually pled guilty to promoting prison contraband in the first degree, a class D Felony, and agreed to a two to four-year prison sentence for that charge. Dkt. No. 58-2 at ¶ 44. On August 12, 2016, Plaintiff appealed his conviction and it was affirmed. *See id.* at ¶ 21.

In December 2016, the Inspector General for DOCCS raided Auburn CF and uncovered multiple items of contraband in the possession of prison guards. Dkt. No. 62-1 at 12. Defendant allegedly admitted to the Cayuga County District Attorney that he had planted at least one weapon on an inmate. *See id.* at 13. The District Attorney provided this information to Plaintiff's counsel and the judge presiding over Plaintiff's appeal, stating that he had "recently learned of an infirmity regarding the credibility" of Defendant and that "his office would not oppose any motion . . . to vacate the previously entered plea and sentence." Dkt. No. 58-15.

After receiving this letter, Plaintiff filed a motion to dismiss his conviction and indictment. Dkt. No. 62-1 at 11. On January 19, 2017, Justice Thomas G. Leone vacated Plaintiff's conviction. *See id*. Plaintiff was released from DOCCS's custody on February 9, 2017. *Id.* at 14.

On September 19, 2017, Plaintiff filed a complaint asserting seven causes of action for violations of state law and constitutional rights: (1) false arrest and false imprisonment pursuant to 42 U.S.C. § 1983 against Defendant Cornell, Dkt. No. 1 at ¶¶ 33-48; (2) false arrest and false imprisonment under New York State law against all Defendants, *see id.* at ¶¶ 48-54; (3) denial of the right to a fair trial pursuant 42 U.S.C. § 1983 against Defendant Cornell, *see id.* at ¶¶ 55-60;

(4) common law assault against all Defendants, *see id.* at ¶¶ 61-64; (5) common law battery against all Defendants, *see id.* at ¶¶ 65-69; (6) municipal liability against the State Defendants, *see id.* at ¶¶ 70-74; and (7) negligent hiring, retention, training, and supervision against the State Defendants, *see id.* at ¶¶ 75-79. On June 22, 2018, the Court issued a Memorandum-Decision and Order dismissing all claims against the State Defendants, the state law assault and battery against Defendant Cornell and all claims against him in his official capacity. Dkt. No. 20.

On August 21, 2020, Defendant filed a motion for summary judgment on Plaintiff's remaining claims, false arrest, false imprisonment, and denial of a right to a fair trial. Dkt. No. 58. On October 21, 2020, Plaintiff filed an opposition to Defendant's motion. Dkt. No. 62. Defendant filed a reply on October 28, 2020. Dkt. No. 63. Defendant's motion is denied-in-part and granted-in-part.

### III. DISCUSSION
**A.    Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* at 554 (quoting *Anderson*, 477 U.S. at 252) (emphasis in original). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' . . . and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

**B.    Exhaustion**

Defendant asserts that Plaintiff's claims are barred because he failed to exhaust his administrative remedies. Dkt. No. 58-1 at 6-17. Plaintiff argues that he repeatedly attempted to exhaust his administrative remedies, but they were unavailable to him. Dkt. No. 62-2 at 15-17. The Court agrees that Plaintiff failed to exhaust his administrative remedies in part.

The Prison Litigation Reform Act ("PLRA") states that "[no] action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones*, 549 U.S. at 218–19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules,

including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford*, 548 U.S. at 90–103.

New York State has a three-step administrative review process, commonly referred to as the Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id*. § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to the Central Office Review Committee ("CORC"). *See id*. § 701.5(d). If all three levels of review are exhausted, then the prisoner may seek relief in a federal court pursuant to section 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by the CORC, must be completed before an action asserting that claim may be filed in federal court. *See, e.g., Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC after commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122–23 (2d Cir. 2001), *overruled on other grounds by Porter*, 534 U.S. 516) (emphasis in original); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (N.D.N.Y. Dec. 5, 2012). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the

time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

Plaintiff asserts that after the incident he was placed in SHU and began writing a series of grievances but none of them were actually filed because his mail was not going out. Dkt. No. 62-2 at 15-16. Plaintiff contends that among his unsent mail were his grievances and letters to his mother and the catholic priest; none of which were ever delivered. *Id*. Plaintiff claims that he demanded that he be able to file a grievance but that he was ignored. *Id*. Plaintiff asserts that the grievance process was further unavailable to him because—eight months later—he transferred correctional facilities a number of times. *Id*. at 16.

In support of his position, Plaintiff relies on *Williams v. Correction Officer Priatno*, 829 F.3d 118 (2d Cir. 2016). In *Williams*, the defendant, a corrections officer, searched through the plaintiff's cell and went through his legal paperwork pertaining to a court case regarding a prior assault he suffered from prison officials. *Id*. at 120. The defendant then assaulted the plaintiff in a room with no cameras and told him, "'this is what running your mouth gets you.'" *Id*. About two weeks later, the plaintiff drafted a grievance and gave it to a corrections officer to submit on his behalf. *Id*. at 121. One week later, the plaintiff saw the superintendent and asked about his grievance. *Id*. The superintendent said he was unaware of the grievance and said to follow up, but the plaintiff was transferred to another facility just one week later. *Id*.

The plaintiff never received a response and claimed that the officer never filed it on his behalf. *Id*. The Second Circuit accepted this allegation as true. *Id*. at 124. While the court agreed that the plaintiff technically could have filed a new grievance at his new facility, the court

8

held that "the regulatory scheme providing for that appeal is 'so opaque' and 'so confusing that ... no reasonable prisoner [could] use [it].'" *Id*. (quoting *Ross*, 136 S. Ct. at 1859). Specifically, the regulations did not detail how a prisoner was to appeal or exhaust an administrative remedy where an officer failed to file the grievance. *Id*. "The regulations simply do not contemplate the situation in which [the plaintiff] found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Id*. The plaintiff's transfer only further complicated a confusing situation. *Id*. at 126.

  Plaintiff's reliance on *Williams* is misplaced. Unlike *Williams*, Plaintiff does not claim that the grievance process was so opaque that neither he, nor any other reasonable prisoner, could use it. Rather, Plaintiff claims that he knew how to file a grievance was but prevented from doing so. While the overview of the alleged facts in *Williams* have some overlap to those of the present case, the legal arguments and the particular supporting facts are entirely distinct.

  For instance, Plaintiff claims that, like *Williams*, his transfer to another correctional facility prevented him from grieving the incident. However, the plaintiff in *Williams* submitted a grievance, contacted the superintendent to follow up on the status of that grievance, and then was transferred to another correctional facility one week later. *Williams*, 829 F.3d at 120-21. The plaintiff supported this allegation by providing the court with the date he filed the grievance, the procedure for how he filed it, and the timeline for roughly when the subsequent follow-up conversations occurred. *Id*. at 121. Here, Plaintiff provides no specifics regarding the grievances he allegedly filed and did not request an extension to file a new one. *See* Dkt. No. 62-2 at 15-17.

Plaintiff's case is more similar to *Rodriguez v. Cross*, No. 15-CV-1079, 2017 WL 2791063, *6 (N.D.N.Y. May 9, 2017). In *Rodriguez*, the plaintiff complained that he submitted a grievance via mail, the correction officers failed to mail it, and thus, he never received a response. *Id*. The court stated that the plaintiff's bald accusations were insufficient to demonstrate that administrative remedies were unavailable to him. *Id*. at *6-7. The court also noted that although the plaintiff never followed up regarding his grievance, he successfully filed another grievance. *Id*. at *7.

Here, Plaintiff testified at his deposition that he filed a grievance by leaving a plain envelope addressed to the grievance committee for the mail personnel to collect. Dkt. No. 58-9 at 74-75. Plaintiff stated that his grievances were collected but, because he never received a response, he presumed that they were never submitted. *Id*. at 75. Like *Rodriquez*, Plaintiff does not assert that he ever followed up on his grievance or offer any explanation as to why he failed to. *See* Dkt. No. 62-2 at 15-17. Additionally, Plaintiff has successfully filed numerous grievances in the past, including one just two weeks before the incident. *See* Dkt. No. 58-1 at 3; Dkt. No. 58-3 at ¶ 8. As in *Rodriguez*, Plaintiff has failed to demonstrate that his administrative remedies were unavailable to him. Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's false arrest and imprisonment claim.[1]

---

[1] In the alternative, the Court finds that Plaintiff's false arrest/imprisonment claim fails on the merits. The law is clear that "'[a] plaintiff does not have a claim for false arrest … under [§] 1983 if, at the time of his arrest …, he is already in custody or incarcerated on other charges, because there is no deprivation of liberty interests.'" *Wong v. LaPierre*, No. 8:07-cv-1110, 2011 WL 13248503, *8 (N.D.N.Y. Mar. 23, 2011) (quotation and other citations omitted); *Holmes v. Grant*, No. 03 Civ. 3426, 2006 WL 851753, *14 (S.D.N.Y. Mar. 31, 2006) ("As plaintiff was already incarcerated at the time of the assault proceeding, he suffered no new seizure"); *Goncalves v. Reynolds*, 189 F. Supp. 2d 278, 283 (W.D.N.Y. 2001) (holding that the plaintiff cannot maintain a

As to Plaintiff's due process claim, however, the Court finds that Plaintiff was not required to exhaust administrative remedies to pursue that claim. Generally, an inmate bringing a due process claim arising from a prison disciplinary hearing must complete the disciplinary administrative appeal process, not the IGP procedures, to exhaust administrative remedies. *See, e.g., Johnson v. Fraizer*, No. 16-cv-6096, 2016 WL 7012961, *3 (W.D.N.Y. Dec. 1, 2016) (citation omitted). Here, however, Plaintiff's due process claim alleges that Defendant violated his right to a fair trial by providing fabricated evidence to the Cayuga County District Attorney, which led to criminal charges being brought against Plaintiff. *See* Dkt. No. 1 at ¶¶ 54-59. Nothing in this claim relates to the Tier III disciplinary hearing or Plaintiff's time spent in SHU as a result thereof. Rather, this claim relates solely to the criminal case brought against Plaintiff, which is unrelated to "prison conditions" as contemplated by the PLRA. *See* 42 U.S.C. § 1997e(a); *see also Cheatham v. Saturne*, No. 1:18-cv-3154, 2019 WL 10631254, *1 (N.D. Ga. Mar. 1, 2019) (discussing cases not subject to the PLRA's exhaustion requirement) (citations omitted).

---

claim for false arrest where he was already being detained pursuant to earlier charges and based upon his prior convictions); *Perez v. Hewitt*, No. 04 Civ. 10112, 2008 WL 780628, *2 (S.D.N.Y. Mar. 24, 2008) (noting that "inmates retain only a 'limited right to bodily privacy' under the Fourth Amendment" and dismissing the plaintiff's false arrest/imprisonment claim because, as an inmate, the plaintiff did "not have a reasonable expectation of privacy in his person"). Although Plaintiff may have been able to bring a malicious prosecution claim against Defendant based on Defendant's alleged fabrication of evidence that was forwarded to the Cayuga County District Attorney's Office that resulted in Plaintiff remaining in state custody beyond the expiration of his original criminal sentence, Plaintiff, who is represented by counsel, did not bring a malicious prosecution claim. *See Parker v. City of New York*, No. 05 Civ. 1803, 2008 WL 110904, *9 (S.D.N.Y. Jan. 7, 2008) (noting that a malicious prosecution claim may exist where "the prisoner's period of incarceration was lengthened as a result of new charges brought against him while he was in custody").

This result is further supported by the fact that Plaintiff would not have been able to pursue this claim until after his conviction was overturned on appeal or otherwise terminated in his favor. Had Plaintiff proceeded with this claim prior to having his conviction vacated, the case would have been dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), because a judgment in Plaintiff's favor on his right to a fair trial/fabricated evidence claim would necessarily imply that his prior conviction was invalid. *See McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (discussing the favorable termination requirement set forth in *Heck*). As such, the Court finds that Plaintiff was not required to exhaust his administrative remedies under the PLRA before pursuing his right to a fair trial claim relating to the new criminal charges.

Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's false arrest and imprisonment claim but denies the motion as to Plaintiff's due process fair trial claim.

**C.     Right to a Fair Trial**

In his third cause of action, Plaintiff alleges that Defendant, in creating and forwarding false evidence, violated his "right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution." Dkt. No. 1 at ¶ 59. Defendant contends that this claim must be dismissed insofar as it seeks relief under the Fifth and Sixth Amendments because the Fifth Amendment is only applicable to the federal government and the Sixth Amendment is inapplicable to civil actions. *See* Dkt. No. 58-1 at 22-24. With respect to Plaintiff's claim under the Fourteenth Amendment, Defendant contends that it must be dismissed

because Plaintiff has presented only conclusory statements and speculation in support of his position that Defendant fabricated evidence.  *See id.* at 24-26.  The Court disagrees.

"The Due Process Clause guarantees a criminal defendant's 'right to a fair trial.'"  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 244 (2d Cir. 2020) (quoting *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010)).  "This right is violated '[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors.'"  *Id.* (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).  "Such violations are 'redressable in an action for damages under 42 U.S.C. § 1983.'"  *Id.* (quotation omitted).  "And unlike a malicious prosecution claim, 'a Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand even if the officer had probable cause to arrest the Section 1983 plaintiff.'"  *Id.* (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277–78 (2d Cir. 2016)).

To set forth a claim of the denial of the right to a fair trial, the plaintiff must establish that an "(1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."  *Jovanovic v. City of New York*, 486 Fed. Appx. 149, 152 (2d Cir. 2012).  The inquiry as to causation is "whether the liberty deprivations that occurred are legally traceable back even further to [the] earlier investigatory act of fabrication."  *Zahrey*, 221 F.3d at 352.  In a recent decision, however, the Second Circuit made clear that the right to a fair trial can be violated even if the fabricated evidence that was supplied to the prosecutor was not ultimately used at trial.  *See Frost*, 980 F.3d at 250.  Moreover, it is important to note that, although the officer need not

13

directly provide the fabricated evidence to the prosecutor, no causation for this claim would exist if such evidence was never brought to the prosecutor's attention. In other words, the claim only accrues "when fabricated information is forwarded to a prosecutor and results in the deprivation of a defendant's liberty." *Soomro v. City of New York*, 174 F. Supp. 3d 806, 815 (S.D.N.Y. 2016) (citation omitted).

Initially, the Court finds that it is unnecessary to determine the precise constitutional amendment underpinning Plaintiff's due process right to a fair trial claim. The Second Circuit has noted that its own decisions have been "'inconsistent as to whether' fabrication of evidence claims 'arise[] under the Sixth Amendment right to a fair and speedy trial, or under the due process clauses of the Fifth and Fourteenth Amendments.'" *Morse v. Fusto*, 804 F.3d 538, 547 n.7 (2d Cir. 2015) (quotation and other citations omitted). Despite these inconsistencies, the Second Circuit has specifically declined to clarify the issue, noting that regardless of which amendment the right is rooted it, it is undisputed that the "constitutional harm resulting from the falsified information at issue is . . . redressable in an action for damages under 42 U.S.C. § 1983." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 276 n.6 (2d Cir. 2016) (citing *Morse v. Fusto*, 804 F.3d 538, 547 n.7 (2d Cir. 2015)). In line with this authority, the Court declines to determine whether the right to a fair trial is rooted in the Sixth Amendment or Fifth and Fourteenth Amendments, or both.

Next, the Court finds that, contrary to Defendant's position, Plaintiff has supported his claim with more than mere speculation and conclusory statements. Defendant relies on a number of cases where the courts dismissed the plaintiffs' right to a fair trial claim because the claims

were supported by nothing more than the plaintiffs' speculation that the officers had falsified evidence. *See* Dkt. No. 58-12 at 24-25 (citing cases). Here, however, Plaintiff's claim is supported by considerably more than mere speculation.

For example, in the Investigative Report prepared by the Office of Special Investigations, it was noted that there was sufficient evidence to corroborate the allegation that Defendant made a verbal admission to Cayuga County Assistant District Attorney ("ADA") Brian Leeds wherein Defendant admitted to planting weapons on inmates at Auburn C.F. *See* Dkt. No. 58-17 at 1-2. Further, the investigator searched Defendant's personal locker and vehicle and found various contraband items and "potential inmate style weapons." *Id.* at 6-7. Moreover, based on Defendant's admission that he had planted weapons on inmates to ADA Leeds and the various contraband items found in Defendant's possession, the Office of Special Investigations reviewed all facility Unusual Incident's and Inmate Misbehavior Reports issued by Defendant since 2014. *See id.* at 7. Of the thirty-eight (38) inmates issued a Misbehavior Report by Defendant for a weapon, twenty-two (22) of the inmates alleged that they had been set up with the weapon by Defendant and fifteen (15) of the inmates admitted that the weapon found by Defendant was theirs. *See id.*[2] As a result of the investigation, on July 30, 2017, Defendant was issued a Notice of Discipline for his failure to properly secure contraband or report contraband found and for his failure "to comport himself in a lawful manner by planting evidence on an inmate and for issuing false/misleading Misbehavior Reports and statements during an official questioning conducted by OSI." *Id.* at 8. On February 27, 2018, Defendant resigned from his position as a Corrections

---

[2] One inmate refused to be interviewed.

Officer with DOCCS. *Id*.

Defendant also relies on a report written by Sgt. Ederer dated May 9, 2015, as well as his deposition testimony. In his report, Sgt. Ederer indicates that Defendant performed a pat frisk of Plaintiff. *See* Dkt. No. 58-12 at 13. Sgt. Ederer stated that Plaintiff admitted to possessing a weapon when questioned by Defendant. *Id*. Sgt. Ederer noted that Defendant recovered a "cutting type weapon sharpened to a point." *Id*. During his deposition on January 7, 2020, Sgt. Ederer verified the authenticity of his May 9, 2015 report. *See* Dkt. No. 58-11 at 32-33. Notably, however, during his deposition Sgt. Ederer stated that he did not observe the pat frisk or Defendant obtaining the weapon from Plaintiff. *See id.* at 31-32. Sgt. Ederer clarified that his report was based on Defendant's statements to him after the fact, although he claims that Plaintiff admitted to him directly that the weapon was his. *See id.* at 34.

Finally, the Court notes that Defendant asserts that Plaintiff confessed multiple times to possessing the weapon. Dkt. No. 58-1 at 21. However, the Court does not find these "admissions" very persuasive. First, Defendant asserts that Plaintiff admitted in an email that the weapon was his. In the email, Plaintiff states, "I KNOW ITS MY FAULT I GOT MORE TIME. ..." Dkt. No. 58-19 at 2. This statement, which is not placed in the context of the entire email chain, is ambiguous. *Id.* at 1-2.

The conversation begins on February 10, 2016 and the quoted text occurred on March 25, 2016. *Id*. at 1. In between those two emails from Plaintiff, there are two other emails, one from Plaintiff and one from Venessa. *Id*. at 1-2. Following Plaintiff's first email on February 10, he sent a second email the next day that appears to reference an entirely different conversation than

the first. *See id*. While the first email appears to reference Plaintiff's legal proceedings for the alleged possession of the weapon, the second email refers only to the relationship between Plaintiff and Venessa, Venessa's relationship with another person, and comments made in another conversation. Further, the pages listed on the document jump from one to thirty-four. *Id*. Thus, the email chain does not provide context as a whole to the conversation and the quoted portion is not particularly damning to Plaintiff by itself.

The phone call the parties reference from May 11, 2016 is also less than clear. During the call, Plaintiff references the weapon and states that he was unwilling to accept a large sentence for having a weapon. Dkt. No. 63. While Plaintiff never states that the weapon was planted on him, he also never states that the weapon was his. *Id*. Rather, Plaintiff continually states that he is fighting the charge and also affirms that he never used the weapon. *Id*. He even states that the judge and district attorney are working against him. *Id*. However, Plaintiff states that he is tired of fighting and is "tapping out." *Id*. Contrary to Defendant's assertions, this call does not arise to the level of an admission of guilt.

Contrary to Defendant's assertions, Plaintiff's right to a fair trial claim is supported by more than mere speculation and conclusory statements. As such, the Court finds that questions of fact preclude granting Defendant's motion for summary judgment as to this claim.[3]

---

[3] In his motion, Defendant argues that he is entitled to qualified immunity as to Plaintiff's false arrest/imprisonment claim based on the existence of "arguable probable cause," but fails to raise the qualified immunity defense as to Plaintiff's right to a fair trial claim. *See* Dkt. No. 58-1 at 28-29. Even assuming Defendant had raised this affirmative defense to Plaintiff's right to a fair trial claim, it would necessarily be denied. "'When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.'" *Garnett*, 838 F.3d at 275

**D.     Damages**

Defendant argues that because Plaintiff did not suffer a "physical injury" as required by the PLRA, he cannot seek compensatory damages. *See* Dkt. No. 58-1 at 27-28. The Court disagrees.

Section 1997e(e) of the PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury," and "applies to claims in which a plaintiff alleges constitutional violations." 42 U.S.C. § 1997e(e); *see also Thompson v. Carter*, 284 F.3d 411, 416-17 (2d Cir. 2002). While the PLRA limits recovery of damages for mental and emotional injury with no showing of physical injury, the Second Circuit has made clear that "it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." *Thompson*, 284 F.3d at 416.

Here, contrary to Defendant's assertion, Plaintiff is still entitled to recover compensatory damages if he prevails on his right to a fair trial claim based on his loss of a "constitutional liberty interest." *Rodriguez v. Touchette*, No. 5:19-cv-143, 2020 WL 2322615, *6 (D. Vt. May 11, 2020) (citations omitted); *Holland v. City of New York*, 197 F. Supp. 3d 529, 537 (S.D.N.Y. 2016) (collecting cases). Compensatory damages for intangible deprivations of a plaintiff's liberty and personal rights – as distinct from pain and suffering, mental anguish, and mental trauma – are not

---

(quotation omitted). Here, questions of fact would preclude granting summary judgment based on qualified immunity for the alleged violation of this clearly established right. *See Ricciuti*, 124 F.3d at 130.

barred by the PLRA. *See Rosado v. Herard*, No. 12 Civ. 8943, 2014 WL 1303513, *13 (S.D.N.Y. Mar. 25, 2014); *see also Malik v. City of New York*, No. 11 Civ. 6062, 2012 WL 3345317, *16 (S.D.N.Y. Aug. 15, 2012).

Accordingly, the Court denies Defendant's motion for summary judgment insofar as he seeks dismissal of Plaintiff's claim for compensatory damages.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 58) is **GRANTED in part and DENIED in part**;[4] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 2, 2021
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[4] As a result of this Memorandum-Decision and Order, Plaintiff's only remaining claim is his due process right to a fair trial claim.